**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RUDY THOMAS,

       Petitioner,                        Civil No. 2:11-CV-15123
                                         HONORABLE ARTHUR J. TARNOW
v.                                 UNITED STATES DISTRICT JUDGE

KENNETH McKEE,

       Respondent,

_____/

## OPINION AND ORDER THE DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

       Rudy Thomas, ("petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for first-degree premeditated murder, M.C.L.A. 750.316(1)(a), and felony-firearm, M.C.L.A. 750.227b.  For the reasons that follow, the petition for writ of habeas corpus is **DENIED.**  The Court will issue petitioner a certificate of appealability and an application to proceed on appeal *in forma pauperis.*

### I.  Background

       Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The evidence at trial indicated that the victim was shot twice in the head while sitting inside a parked SUV during the afternoon. Solomon Israel, a passerby,

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

heard someone in the SUV make a high-pitched plea to "stop" shortly before hearing gunshots. Moments later, Israel saw defendant get out of the passenger side of the SUV with a firearm in his hand, tuck the firearm into his waistband, and nonchalantly leave the area. There was testimony that the victim's injuries were consistent with first being shot upward in the chin and, after falling over, being shot a second time from close range in the top of the head. The evidence that the victim pleaded with the shooter to "stop" before being shot, that the victim was shot a second time in the head from close range after falling over from the first shot, and defendant's casual demeanor after the shooting, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find that there was "sufficient time to ... take a second look" and to support a finding of premeditation and deliberation for first-degree murder.

*People v. Thomas,* No. 284982, * 2, 2010 WL 1726736 (Mich.Ct. App. April 29, 2010).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 488 Mich. 948, 790 N.W.2d 402 (2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Was there sufficient evidence to support a conviction of first degree murder where there was no evidence of premeditation?

II. Was Rudy Thomas' Sixth Amendment right to the effective assistance of counsel was [sic] violated by his own counsel's strange and inappropriate conduct which appears plainly on the record and therefore does not require an evidentiary hearing?

III. Was defendant Rudy Thomas' right to due process of law and a fair trial were [sic] spoiled by the prosecutor's improper conduct?

IV. Is there reversible error where, over objection, three recorded calls from the jail with dubious probative value and greater prejudicial impact are put into evidence?

2

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

06 (2000).  An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

*Id.* at 409.  A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

3

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III. Discussion

#### A. The sufficiency of evidence claim.

Petitioner first contends that there was insufficient evidence of premeditation and deliberation to support his conviction for first-degree murder.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364

4

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

(1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).  A federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003).

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(citing *People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)). Premeditation may be established through evidence of the following factors:

1. the prior relationship of the parties;
2. the defendant's actions before the killing;
3. the circumstances of the killing itself;
4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F. 3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)((*quoting People v. Vail,* 393 Mich. 460, 469; 227 N.W. 2d 535 (1975)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596 (quoting *People v.*

6

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

*Berthiaume*, 59 Mich. App. 451, 456 (1975)).  Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N. W. 2d 202 (1993).  Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W. 2d 617 (1975)).  Finally, premeditation and intent to kill may be inferred from circumstantial evidence. *See DeLisle v. Rivers,* 161 F. 3d 370, 389 (6th Cir. 1998).

The Michigan Court of Appeals' determination that there was sufficient evidence of premeditation and deliberation to sustain petitioner's first-degree murder conviction was reasonable.  Solomon Israel testified that prior to the shooting, he heard someone in the SUV make a plea to "stop."  The fact that petitioner ignored the victim's pleas to stop prior to discharging his weapon supports a finding of premeditation. *See Johnson v. Hofbauer,* 159 F. Supp. 2d at 597.   The evidence establishes that the victim was shot twice in the head.  The firing of multiple gunshots at the victim was sufficient to establish premeditation and deliberation. *See Crawley v. Curtis*, 151 F. Supp. 2d 878, 888-89 (E.D. Mich. 2001).  Under Michigan law, premeditation may also be logically inferred from wounds inflicted on vital parts of the victim's body. *See Lundberg v. Buchkoe,* 338 F. 2d 62, 69 (6th Cir. 1964).  The medical examiner testified that the first gunshot was consistent with the victim being shot upward in the chin.  The evidence established that after falling over from the first gunshot, the victim was shot a second time from close range in the top of the head.  Evidence that the victim had been shot in

7

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

the head at close range supports a finding of premeditation and deliberation. *See Crenshaw v. Renico,* 261 F. Supp. 2d 826, 833 (E.D. Mich. 2003). Finally, after shooting the victim, petitioner put the gun into his waistband and "nonchalantly" left the crime scene. Petitioner's calm demeanor after the shooting supports an infererence of premeditation. *See Houston v. Dutton*, 50 F.3d 381, 383 (6th Cir. 1995).

The Michigan Court of Appeals' rejection of petitioner's sufficiency of evidence claim was reasonable. Petitioner is not entitled to habeas relief on his first claim.

### B. The ineffective assistance of counsel claims.

Petitioner next alleges that he was deprived of the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability

8

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a

demanding one. 'The likelihood of a different result must be substantial, not just

conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting

*Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the

burden on the defendant who raises a claim of ineffective assistance of counsel, and

not the state, to show a reasonable probability that the result of the proceeding would

have been different, but for counsel's allegedly deficient performance. *See Wong v.*

*Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court

believes the state court's determination' under the *Strickland* standard 'was incorrect

but whether that determination was unreasonable-a substantially higher threshold.'"

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550

U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of

the *Strickland* standard was unreasonable.  This is different from asking whether

defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*,

131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a

state court has even more latitude to reasonably determine that a defendant has not

satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541

U.S. at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review"

applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Petitioner first contends that he is entitled to automatic reversal of his conviction because his trial counsel was unprepared for trial, having only been petitioner's retained counsel for about two weeks prior to trial.

The Michigan Court of Appeals rejected petitioner's claim:

Here, defense counsel was adamant that he was prepared to proceed, and the trial court noted that defendant himself wanted to proceed with trial. Defendant makes no specific claims of prejudice, and does not indicate what defense counsel could have done differently that would have changed the outcome of trial had counsel had more time. Defendant asserts that defense counsel was not adequately prepared to challenge telephone recordings of defendant's conversations from jail, but as discussed in section IV, those recordings were properly admitted.  Further, defense counsel's questions, remarks, and arguments throughout trial demonstrate that he was familiar with the case and prepared for trial.  There is simply nothing in the record to support defendant's assertion that defense counsel was unprepared to try the case.

*Thomas,* Slip. Op. at * 2-3.

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer,* 286 F. 3d 851, 860 (6th Cir. 2002)(quoting *United States v. Cronic,* 466 U.S. 648, 659 (1984)).  However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002).

At the beginning of trial, counsel indicated he had only been retained by petitioner two weeks earlier but indicated that he did not need additional preparation time and that petitioner did not want an adjournment. (Tr. 2/27/08, pp. 12-13). Petitioner's counsel participated in the *voir dire* process and excused several jurors. (*Id.,* p. 33, 76-77, 83-84).  Prior to the beginning of testimony, petitioner's counsel requested that the prosecutor produce the witnesses' criminal records for impeachment purposes. (*Id.,* pp. 87-91).  During the prosecutor's opening argument, petitioner's counsel objected to the admission of the jailhouse telephone recordings. (Tr. 3/3/08, p. 22).  Petitioner's counsel vigorously cross-examined Solomon Israel about his prior inconsistent statements and conflicting testimony.  In particular, counsel elicited from Solomon Israel admissions that he only saw the shooting suspect for a split second and that he had been looking down at his cellphone when he first heard the gunshots.

11

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

Israel further acknowledged that he never asked the person whom he had been talking

to on the cellphone at the time of the shooting whether he had heard the gunshots over

the phone. (*Id.,* pp. 52-67, 72-86, 98-103).  Counsel cross-examined the police

witnesses. (Tr. 3/4/2008, pp. 8-9; 42-43, 56-72, 83-84).  In particular, counsel obtained

an admission from Corporal Emmanuel Johnson of the Wayne County Jail that inmates

sometimes use other inmate's PIN numbers to make phone calls, in order to call into

question whether petitioner was, in fact, the person speaking on the jailhouse

telephone recordings. (*Id.,* pp. 42-43).  Counsel elicited from Sergeant Matthew Gnatek

the fact that no usable fingerprints or DNA evidence was obtained in this case, that no

gunshot residue test had been performed inside of the truck where the victim had been

shot, that Solomon Israel did not actually make the 911 call to the police that he

claimed to have made, instead having someone else make it for him, and that the

police only searched their DNA databank to determine if the DNA taken from a water

bottle in the truck matched either the petitioner's or the victim's DNA, but did not search

for whether the DNA matched any other person's DNA. (*Id.,* pp. 60-70, 74-75).  At the

conclusion of the testimony, counsel again objected to the admission of the jailhouse

telephone recordings on relevancy grounds. (*Id.,* pp. 98-100).  Lastly, counsel made a

closing argument, in which he attacked the credibility of Solomon Israel and the lack of

any corroborating physical evidence. (Tr. Excerpt, 3/4/08, pp. 19-25). [1]

---

[1]  The closing arguments were transcribed separately from the testimony for
March 4, 2008 and are found in the transcript marked "Excerpt of Jury Trial" for March
4, 2008. See this Court's Dkt. # 6-7.

12

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

Counsel's alleged errors did not rise to the level of the constructive denial of counsel, because counsel actively represented petitioner at his trial. *Moss,* 286 F. 3d at 860-62. The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F. 3d 236, 247 (6th Cir. 2007)(citing *Bell*, 535 U.S. at 697). In the present case, counsel's alleged failures do not amount to a complete failure to provide a defense. The presumption of prejudice therefore does not apply and petitioner would be required to show that he was actually prejudiced by counsel's alleged omissions in order to obtain habeas relief. *Id.*

Petitioner initially contends that trial counsel was ineffective for failing to object to the admission of the jailhouse inmate recordings. Petitioner's claim fails for several reasons. First, counsel objected twice to the admission of these recordings. Because counsel did, in fact, object to the the admission of the jailhouse inmate recordings, petitioner's ineffective assistance of counsel claim is without merit. *See e.g. Durr v. Mitchell,* 487 F.3d 423, 440 (6th Cir. 2007).

Secondly, the Michigan Court of Appeals ruled that the jailhouse recordings were admissible to corroborate Israel's identification of petitioner as the perpetrator as well as Israel's testimony that he had been approached by one of petitioner's associates, thus, to suggest that Israel had been intimidated. *Thomas,* Slip. Op. at * 6. It is well-settled "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62,

13

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

67-68 (1991).  Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  Because the Michigan Court of Appeals determined that this evidence was relevant and admissible under Michigan law, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292  Fed. Appx. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. 2003).  The Michigan Court of Appeals determined that the evidence was relevant and admissible under Michigan law.  The failure to object to relevant and admissible evidence in not ineffective assistance of counsel. *See Alder v. Burt,* 240 F. Supp. 2d at 673.  Petitioner is not entitled to relief on this claim.

Petitioner next contends that counsel was ineffective for failing to object to the prosecutorial misconduct that he complains of in Issue # C, *infra.*  To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different.  *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).  As discussed in Claim # 3, *infra,* the Court determines that the prosecutor's remarks did not deprive petitioner of a fair trial.  Because the prosecutor's comments and arguments did not deprive petitioner of a fundamentally fair trial, petitioner is

14

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

unable to establish that he was prejudiced by counsel's failure to object to some of these remarks. *See Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006).

Petitioner's primary contention is that counsel acted unprofessionally during his cross-examination of Solomon Israel, which caused the prosecutor to comment that counsel was "not acting like an officer of the court should," and required the trial court to admonish counsel because of his conduct.

The Michigan Court of Appeals rejected petitioner's claim:

> Although the record discloses that defense counsel became argumentative with Israel at times, apparently stood too close to him at one point, and inappropriately grabbed a document from his hand, it does not reveal that these instances were pervasive or out of proportion to the overall adversarial nature of the trial, or that they impacted defense counsel's presentation of a vigorous defense on defendant's behalf. While defense counsel apparently chose to pursue an aggressive style of questioning Israel, this was not objectively unreasonable given that Israel was the principal witness against defendant. Further, the records shows that Israel sometimes answered defense counsel's questions with a question and himself became argumentative with defense counsel. Moreover, defendant has not explained how counsel's conduct prejudiced him. And, in any case, the jury was instructed that it was not to consider the attorney's statements or the court's rulings as evidence, and that it was to rely only on the evidence in considering whether the prosecution had established defendant's guilt. Jurors are presumed to follow their instructions. Under the circumstances, the record does not demonstrate that defense counsel's conduct as a whole was objectively unreasonable, or that it prejudiced defendant's right to a fair trial.

*Thomas,* Slip. Op. at * 3 (internal citation omitted).

Overzealousness of counsel does not amount to the ineffective assistance of counsel. *See United States v. DiPaolo,* 804 F. 2d 225, 234 (2nd Cir. 1986); *See also*

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

*U.S. v. Francis,* 646 F. 2d 251, 261 (6th Cir. 1981)(whether complaint made by defendant with respect to point in trial when judge asked counsel to keep his temper when counsel became overzealous in his efforts to persuade judge to reconsider his refusal to excuse jury was viewed as evidence of ineffective assistance of counsel or more properly as a claim that judge's attitude denied defendant right to counsel, defendant's claim was baseless).  The mere fact that counsel might have been admonished by the trial court at times for being overly aggressive would be insufficient, in and of itself, to support a finding of ineffective assistance of trial counsel. *See Moore v. Scully,* 956 F. Supp. 1139, 1150-51 (S.D.N.Y. 1997). Although counsel's conduct before the jury may have been combative, he was following a technique often employed by defense counsel. See *United States v. Cruz*, 785 F. 2d 399, 406-407 (2nd Cir. 1986).  Indeed, counsel may very well have thought that an aggressive style might work well with the jury, particularly with a witness like Solomon Israel who had given conflicting and inconsistent statements. Because petitioner has failed to show how counsel's allegedly combative and argumentative style prejudiced his defense, he is not entitled to habeas relief on his ineffective assistance of counsel claim. *See Mason v. Mitchell,* 320 F. 3d 604, 618 (6th Cir. 2003).

Lastly, petitioner claims that he was denied the effective assistance of counsel when defense counsel's wife, who was also an attorney, made an objection during trial. As the Michigan Court of Appeals noted in rejecting this claim, *See Thomas,* Slip. Op. at 3, although defense counsel's wife's objection was improper, petitioner has failed to

16

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

show how he was prejudiced by this isolated occurrence.  Petitioner is not entitled to

habeas relief on his second claim.

### C.  The prosecutorial misconduct claim.

Petitioner next claims that he was deprived of a fair trial because of

prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas

review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).  Prosecutorial

misconduct will form the basis for habeas relief only if the conduct was so egregious as

to render the entire trial fundamentally unfair based on the totality of the circumstances.

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The determination whether

the trial was fundamentally unfair is "made by evaluating the totality of the

circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605,

608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability

of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir.1997)(quoting *Serra

v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).  Indeed, "[t]he Supreme

Court has clearly indicated that the state courts have substantial breathing room when

considering prosecutorial misconduct claims because 'constitutional line drawing [in

prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d

at 516 (quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a

prosecutorial misconduct claim, a habeas petitioner must show that the state court's

rejection of his prosecutorial misconduct claim "was so lacking in justification that there

17

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87).

Petitioner first contends that the prosecutor committed misconduct in his opening argument by making improper references to the jailhouse telephone recordings.

"An opening statement is designed to allow each party to present an objective overview of the evidence intended to be introduced at trial." *United States v. Burns*, 298 F. 3d 523, 543 (6th Cir. 2002)(citing *United States v. Brockington*, 849 F. 2d 872, 875 (4th Cir. 1988)). It is inappropriate for a prosecutor to "use the opening statement to poison the jury's mind against the defendant or to recite items of highly questionable evidence." *Id.* (internal quotation marks and citations omitted).

The prosecutor did not commit misconduct by referring to the jailhouse telephone recordings in his opening statement because when viewed in context, the prosecutor was simply setting forth the evidence he would present in his case and what it would prove. *See U.S. v. Jewell,* 16 Fed. Appx. 295, 299 (6th Cir. 2001). There was nothing improper about the prosecutor's remarks in his opening argument because he was merely summarizing what he expected the evidence to show in this case. *See U.S. v. McCaskill*, 62 Fed.Appx. 71, 76 (6th Cir. 2003). Additionally, the trial judge advised the jurors at the beginning of trial that the lawyers' opening arguments were not evidence (Tr. 3/3/08, p. 15) and again advised the jurors at the close of the case that

18

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

the lawyers' arguments were not evidence. (Tr. 3/5/08, p. 7).  The trial court's

instructions that the opening arguments were not evidence cured any possible

prejudice in this case. *Burns,* 298 F. 3d at 543.

Petitioner next contends that the prosecutor gave unsworn testimony and

argued facts that had not been introduced into evidence in both his opening and

closing statements.

Misrepresenting facts in evidence by a prosecutor can amount to substantial

error because doing so "may profoundly impress a jury and may have a significant

impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir.

2000)(*quoting Donnelly*, 416 U.S. at 646).  Likewise, it is improper for a prosecutor

during closing arguments to bring to the jury any purported facts which have not been

introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535

(6th Cir. 2000).  However, prosecutors must be given leeway to argue reasonable

inferences from the evidence. *Id.*

In the present case, for reasons stated in greater detail by the Michigan Court of

Appeals in their opinion, *See Thomas,* Slip. Op. at * 4-5, the prosecutor did not

misrepresent the facts or inject matters that had not been introduced into the record

because the prosecutor's remarks were based on the evidence and reasonable

inferences that arose from the evidence.  Any prosecutorial misconduct in attempting to

inject facts that had not been introduced into evidence was also ameliorated by the trial

19

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

court's instruction that the lawyers' comments and statements were not evidence. *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003).

Petitioner further contends that the prosecutor impermissibly acted "as an expert in slang" by arguing that the defendant's use of the phrase "to holler" in the jailhouse telephone recordings meant "to intimidate."  Although it was improper for the prosecutor to inject himself into trial as a witness, the prosecutor's attempt to define the phrase "to holler" did not deprive petitioner of a fair trial, because Israel had already testified that one of petitioner's associates had approached him in an intimidating fashion and the jailhouse recordings indicated that petitioner's associates had approached Israel. *See Thomas,* Slip. Op. at * 5.  Even if the prosecutor improperly acted as a witness in this case, the misconduct did not deprive petitioner of a fair trial in light of the fact that it was cumulative of properly admitted evidence to suggest that Israel had been intimidated. *See U.S. v. Birdsong,* 330 Fed. Appx. 573, 583 (6th Cir. 2009).  Petitioner is not entitled to habeas relief on his third claim.

### D.  The jailhouse telephone recordings claim.

Petitioner lastly claims that the trial judge erred in admitting the jailhouse telephone recordings into evidence because they were of dubious probative value which was outweighed by their prejudicial impact.

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D.

20

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).  Petitioner is not entitled to habeas relief on his fourth claim.

### E.  A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court concludes that jurists of reason would find its assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484-85.  Any doubt regarding whether to grant a COA from the denial of a petition for federal habeas relief is resolved in favor of the habeas petitioner, and the severity of the penalty may be

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

considered in making that determination. *See Newton v. Dretke,* 371 F. 3d 250, 253 (5th Cir. 2004). Any doubts regarding the issuance of a COA in this case should be resolved in petitioner's favor, in light of the nonparolable life sentence that he is serving. The Court thus issues petitioner a COA. Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous. A court may grant *in forma pauperis* status if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Thomas is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis.*

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: February 15, 2013

22

*Thomas v. McKee,* U.S.D.C. 2:11-CV-15123

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on February 15, 2013, by electronic and/or ordinary mail.

S/Catherine A. Pickles

Judicial Assistant